UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEPHEN J. TUCKER, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:09-cv-3630 |
| § | |
| CONN APPLIANCES, INC., D/B/A § | |
| CONN'S APPLIANCES AND/OR § | |
| CONN'S, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant's Motion to Dismiss and Compel Arbitration or Alternatively, to Stay Proceedings Pending Arbitration (Doc. No. 7). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the Defendant's motion should be denied.

**I.    BACKGROUND**

This lawsuit arises out of claims of discrimination in the workplace. Plaintiff Stephen Tucker ("Tucker") is a former employee of Conn Appliances, Inc. ("Conn"). Tucker began his employment in 2002, and worked at a Conn store in Houston until his termination in 2007. He contends that Conn fired him following his attempt to take time off work to observe the Jewish holiday of Yom Kippur, thereby discriminating against him in violation of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. §§ 21.001-21.556 (Vernon 2006).

In this motion, Conn seeks to compel arbitration on Tucker's claims and dismiss this action, or, alternatively, to stay proceedings pending arbitration. Conn alleges that Tucker's claims are subject to binding arbitration pursuant to the current version of Conn's Dispute Resolution Plan (the "Current Plan"). Plaintiff, who signed a former version of Conn's Dispute Resolution Plan (the "Former Plan"), disputes that he is bound by the terms of the Current Plan, arguing that he is a non-signatory to the Current Plan and was not notified of its adoption by Conn. Tucker argues alternatively that, if the Court finds that arbitration is appropriate, it order only that the parties fulfill their arbitration responsibilities pursuant to the Former Plan.

The Court will consider the parties' arguments in turn.

## II.     LEGAL STANDARD

Title VII claims are subject to mandatory arbitration agreements. *Pleasant v. Houston Works USA*, 236 F. App'x 89, 92 n.1 (5th Cir. 2007) (citing *Rojas v. T.K. Commc'ns, Inc.*, 87 F.3d 745, 747-48 (5th Cir. 1996)). Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, which applies to this dispute, "[a] two-step inquiry governs whether parties should be compelled to arbitrate a dispute." *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). "'First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable." *Id.* (quoting *RM Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)). The first step of the inquiry itself has two parts, requiring that a court determine first, whether there is a valid agreement to arbitrate between the parties, and second, whether the dispute in question falls within the scope of that arbitration agreement. *Id.*

(quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). These questions are decided under state law. *Id.* Although there is a "strong federal policy favoring arbitration," that policy does not apply to the initial determination of whether a valid agreement to arbitrate exists. *Id.* (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). "Nonetheless, once a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring arbitration and must resolve all ambiguities in favor of arbitration." *Id.* (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)).

### III.     ANALYSIS

#### A.  Is there a valid agreement to arbitrate?

The parties do not dispute that Tucker signed an arbitration agreement at the time he was hired in February 2002. That agreement constitutes the Former Plan. The parties vigorously dispute, however, whether Tucker may be bound to the Current Plan, which was adopted in March 2006 and modified in May 2007. The Current Plan requires arbitration of all employment related claims including, but not limited to:

> [C]laims for which the applicant, employee, or former employee has an alleged cause of action, regarding or relating to employment discrimination; terms and conditions of employment; or cessation or termination of employment, including, but not limited to, claims for breach of any contract (express or implied); tort claims; claims for discrimination (including discrimination based on sex, race, national or ethnic origin, age, religion, creed, mental or physical disability or medical condition or other characteristics protected by statute); claims of sexual harassment; claims for wrongful discharge; claims for violations of the Family and Medical Leave Act (FMLA); claims based on the Americans with Disabilities Act (ADA); wage or benefit claims under the Fair Labor Standards Act ("FLSA"); claims under the Uniformed Services Employment and Reemployment Act ("USERRA"); claims of retaliation due to Workers' Compensation claims or Conn's Whistle Blower Policy; claims of retaliation due to filing complaints or charges with any local statute, state, federal or other agency; and/or claims for violation of any

3

> other federal, state or other governmental law, statute, regulation or ordinance, whether based on statute or common law . . . .

(Def.'s Mot. to Dismiss and Compel Arbitration or Alternatively, to Stay Proceedings Pending Arbitration, Doc. No. 7, Ex. 2, at 4.)  Conn argues that the Current Plan controls the parties' dispute.  Conn's Vice President of Human Sources provided an affidavit stating that all active employees received "written notification of the adoption of the [Current] Plan, as well as a copy of the actual [Current] Plan, prior to its implementation."  (Doc. No. 7, Ex. 3, ¶ 5.)  In addition, Conn avers that, prior to the adoption of the Current Plan, Defendant notified all employees, including Tucker, that by continuing to work at Conn after March 1, 2006, they agreed to accept the terms and conditions of the Current Plan.  (Doc. No. 7, Ex. 4.)  Subsequently, all active employees received written notification of the Current Plan's modification in June 2007.  By continuing to work at Conn after March 1, 2006, Conn argues, Tucker accepted the terms of the Current Plan and must be bound by it.

Tucker counters that he was not put on notice of the Current Plan's adoption by Conn, nor was he deemed to have accepted the Current Plan by continuing to work at Conn after March 1, 2006.  (Pl.'s Opp. to the Mot. by Def. Conn Applicances, Inc. to Dismiss the Compl. and Compel Arbitration, Doc. No. 10, Ex. 1, ¶¶ 13-16.)  Therefore, Tucker argues, the Current Plan did not modify the terms of his employment with Conn and does not govern the instant lawsuit.  (Pl.'s Opp. to the Mot. by Def. Conn Applicances, Inc. to Dismiss the Compl. and Compel Arbitration, Doc. No. 10, at 3-4.)

Both parties agree that Tucker was an at-will employee of Conn.  "In employment at will situations, either party may impose modifications to the employment terms as a condition of continued employment."  *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227,

229 (Tex. 1986). A party asserting a modification to the contract must prove two things: (1) notice of the change, and (2) acceptance of the change. *In re Halliburton Co.*, 80 S.W.3d 566, 569 (Tex. 2002) (citing *Hathaway*, 711 S.W.2d at 229). "[T]o prove notice, an employer asserting a modification must prove that [it] unequivocally notified the employee of definite changes in employment terms." *Id.* If an employer notifies an employee of changes to an-will employment contract "and the employee 'continues working with knowledge of the changes, he has accepted the changes as a matter of law.'" *Id.* (quoting *Hathaway*, 711 S.W.2d at 227).

Working with these rules, the Supreme Court of Texas, in *In re Halliburton Co.*, determined that an employee was bound by an arbitration clause adopted by his employer during his term of employment. In that case, the employer had adopted a new dispute resolution program that required binding arbitration as the exclusive method for resolving disputes between the company and its employees. 80 S.W.3d at 568. The plaintiff did not dispute that he received notice from the company regarding the adoption of a dispute resolution program. The notice "explained the [p]rogram, stated its effective date, and explained that by working after that date an employee would indicate that he or she accepted the provision." *Id.* at 568. The plaintiff asserted, however, that he "only briefly looked at the documents and that he did not understand them." *Id.* at 568-69.

The *Halliburton* court stated that the materials given to the plaintiff "unequivocally notified him that his employment terms would be changing," and that, by continuing to work for the company past the effective date, the plaintiff had "accept[ed] the changes as a matter of law." *Id.* at 569. The court concluded that, on the record before it, the company's "offer was unequivocal and . . . [the plaintiff's] conduct was an

5

acceptance of that offer." *Id.* Conn argues that the circumstances of this case parallel those in *Halliburton*, and thus urges that this Court follow *Halliburton* by compelling arbitration here.

Tucker, however, points this Court to another case that, he argues, better aligns with the facts here. In *Moran v. Ceiling Fans Direct, Inc.*, the Fifth Circuit concluded that an arbitration clause adopted during an at-will employee's term of employment did not constitute an agreement to arbitrate between the plaintiffs and the company. 239 F. App'x 931, 937 (5th Cir. 2007). In that case, a company instituted a new policy requiring arbitration for all employment-related disputes. The parties agreed that the plaintiffs attended a meeting where the president and general manager of the company stated that the company was adopting the policy. The parties disputed whether a notice of the change in policy was handed out to all employees at the meeting, or placed on a table. That notice stated that all employment related disputes would be arbitrated, and further stated that any employee working past the effective dated would be deemed to have accepted the terms of the new policy. *Id.* at 933-34. This provision, however, was not explained to the employees at the meeting. Many of the employees, including the plaintiffs, did not take a copy of the notice. One plaintiff informed the president that he would not sign the policy, and the president responded by telling him not to worry about it. A month later, the company issued an employee handbook that included a copy of the new policy and a signature page acknowledging that the employee read and understand the new policy. The company did not require any signatures, however, and did not receive any. By contrast, the company did require all employees to initial their agreement to another policy on drug and alcohol use at the workplace. Furthermore, the

6

president circulated a memo several months later indicating that the arbitration policy could not be changed or discontinued at any time, contrary to the plain wording of the arbitration policy itself. *Id.* at 934. The Fifth Circuit held, under these facts, that the company failed to establish unequivocal notification of the terms of the policy.

Based on this caselaw and the Court's review of other cases, it concludes that the Current Plan is not a valid agreement to arbitrate this employment dispute. The parties give starkly differing accounts of whether Tucker was notified of the Current Plan's adoption. Thomas Shields, the company's vice president for human resources, testifies that all employees were provided written notification of the Current Plan's adoption, in addition to a copy of the Current Plan. He testifies further that the employees were notified in writing that, by continuing to work for Conn after March 1, 2006, all employees accepted the terms and conditions of the Current Plan. Tucker, on the other hand, testifies that he did not receive a copy of the Current Plan until after termination, that he never read or signed a copy of the Current Plan, and that no Conn employee ever explained to him its terms and how they affected his employment.

Conn offers two separate letters, both entitled "Conn's Dispute Resolution Plan," that it claims it distributed to all employees. The Court is satisfied that the two letters do indeed constitute sufficient notice of the change in an at-will employee's contract. What the Court cannot find, upon this set of facts, is that Tucker *unequivocally* received one or both of these letters as required by Texas law. Nowhere in Conn's submitted evidence, including Mr. Shields' affidavit, does the company offer a shred of evidence specific to Tucker. Instead, it avers generally that "all employees" received relevant materials. The Court finds that Conn fails to establish that Tucker received any of the materials

explaining the Current Plan. Evidence that has proven helpful to other courts in making this determination, including employee time records, signatures, or attendance lists, are entirely absent here. Conn does not show that it specifically delivered a copy to Tucker, that Tucker ever attended one of the "informational meetings" regarding the Current Plan, or that anyone ever spoke with Tucker about the adoption of the Current Plan. Additionally, although Conn requires all new employees to sign a copy of the Current Plan, it did not require signatures of continuing employees.

Tucker, by contrast, provides an affidavit asserting that he never read or signed a copy of the Current Plan, and that he was never provided with a physical copy until it was mailed to him along with his termination letter. He states furthermore that no one at Conn ever explained to him the terms of the Current Plan, nor how it changed the terms of his employment. Although it is unclear exactly who was notified about the Current Plan and how, the Court is satisfied that Conn has failed to meet its burden of proving modification of the contract, because it has not established that Tucker received *unequivocal* notification of its modified employment terms.[1] Under these circumstances, Tucker's continued employment "did not equal acceptance under the law." *Moran*, 239 F. App'x at 937.[2]

---

[1] This case, unlike some cases cited in this order, does not present a situation in which "'written notice was contradicted by other written or oral communications between the employer and the employee.'" *Moran*, 239 F. App'x at 937 (quoting *Halliburton*, 80 S.W.3d at 568-69). This factor, however, is separate from and not required for a determination that Plaintiff did not receive unequivocal notice. *See id.* ("In contrast, [the employees] did not receive unequivocal notice of the arbitration policy *and* there were several contradictory written and oral communications between [the company] and [the employees].") (emphasis added).

[2] Having concluded that the Current Plan is not a valid modification of the parties' at-will employment contract, the Court need not address the question of whether the dispute falls within the scope of the agreement, or whether any federal statute or policy renders the claims nonarbitrable. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (quoting *RM Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 538 (5th Cir. 1992)).

Tucker does not dispute that he signed the Former Plan in 2002, which also contains an arbitration clause, but instead argues that the contract is invalid for lack of consideration. The Court need not consider this argument, because Conn moves only to compel arbitration under the Current Plan. The Court concludes the Current Plan is not a valid agreement to arbitrate, and accordingly refuses to compel arbitration based on its terms.

### IV. CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss and Compel Arbitration or Alternatively, to Stay Proceedings Pending Arbitration (Doc. No. 7) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 6th day of July, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**